James H.M. Sprayregen, P.C.
Ray C. Schrock (admitted *pro hac vice*)
Brian S. Lennon
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022-4611
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

- and -

Anup Sathy, P.C. (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

Counsel to the Debtors and Debtors in
Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| NEFF CORP., <u>et al.</u>,[1] | ) | Case No. 10-12610 (SCC) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**DEBTORS' OBJECTION TO THE *EX PARTE* MOTION OF
THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR
ENTRY OF AN ORDER PURSUANT TO BANKRUPTCY RULE 2004
DIRECTING EXAMINATION AND PRODUCTION OF DOCUMENTS**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Neff Holdings LLC (0571); Neff Corp. (6400); Neff Finance Corp. (3639); Neff Holdings Corp. (0431); Neff Rental, Inc. (0403); and Neff Rental LLC (3649). The location of the Debtors' corporate headquarters and the service address for all the Debtors except Neff Holdings LLC is: 3750 N.W. 87th Ave., Suite 400, Miami, Florida 33178. The service address for Neff Holdings LLC is: 375 Park Avenue, New York, New York 10152.

K&E 17308314

The official committee of unsecured creditors' (the "Committee") *ex parte* Rule 2004 Motion ("Motion") to take almost unlimited discovery of the Debtors and third parties should be denied. The Committee has not established good cause for the scope of its requests and the burden of the Committee's requests far outweighs any benefit to the unsecured creditors. The Committee improperly seeks unfettered discretion to pursue "discovery requests and subpoenas as may be necessary." The Committee also seeks an Order directing this discovery without an attempt to make the requests amicably, and it makes the requests for an improper, coercive purpose. For these reasons and the reasons set forth below, the Court should deny the Motion without prejudice and the Committee should be directed to meet with Debtors' representatives to attempt to a reach reasonable scope of discovery within the next 48 hours.

*First*, the Committee's Motion should be denied because the Committee failed to contact Debtors' counsel to meet and confer on this discovery-related motion. Even though these are prearranged cases, there is no reason for the Committee to seek *ex parte* relief. That is particularly true where, as here, the Debtors repeatedly asked to see the Committee's discovery requests related to the LBO and Exchange. The Debtor requested multiple times to see the Committee's contemplated requests. The Committee failed not only to provide that courtesy to the Debtors, but failed to serve the Motion on four of the nine third-parties it is specifically targeting in the Motion.

*Second*, the Committee's discovery requests are vastly over-broad, amounting to essentially the equivalent of requests for all documents that the Debtors' senior management receives for a three-and-a-half year period. For example, the Committee requests "All Documents and Communications Concerning any business plans, projections, forecasts, strategic plans and operating plans, including underlying assumptions for the Debtors" from "January 1,

2

2007 to the date [of production]." (Motion, Ex. B (Proposed Request No. 8 and Instruction L)). These expansive discovery requests are particularly unnecessary given the formal and informal discovery that the Committee has already received from the Debtors. The Committee has received more than ample discovery about the Debtors and their businesses to understand the potential claims and develop more targeted discovery requests.

*Third*, the Committee seeks unfettered discretion to pursue discovery requests, including depositions, on an *ex parte* basis without giving actual notice to Third Parties. The Committee's proposed order would grant the Committee the power to serve any third party with document requests or a deposition notice "***in its discretion***." (Motion, Ex. A (Proposed Order) (emphasis added)). The Committee intends to serve at least nine parties specifically but also states that it may serve countless unspecified third parties. (See Motion at 9.) The proposed Order would leave the Debtors and many of their constituents vulnerable to continued, uncontrolled discovery from the Committee. Moreover, the Committee's scattershot approach of taking nearly-identical Rule 2004 discovery from nine named and countless unnamed parties is inefficient and a waste of the estate's resources.

*Fourth*, the Committee's litigation-first tactics further indicate that the primary purpose of the Rule 2004 discovery is harassment and coercion rather than genuine claim investigation. The Committee is seeking the maximum amount of discovery possible in the hope that the sheer burden and expense of compliance will enable the Committee to extract hold-up value. Before seeking this Motion, the Committee refused to meet and confer with the Debtors, share its requests informally or pursue information through informal requests. If the Committee had, the Debtors, consistent with their efforts so far in these proceedings, would have worked quickly to negotiate a reasonable scope of discovery, produce documents and facilitate the document

3

productions of third parties. The Committee's decision to file a Rule 2004 Motion *ex parte* on the same day that the Committee's counsel was sitting across from Debtors' counsel taking two depositions is telling about its tactics and motivation.

*For these reasons*, the Court should deny the 2004 Motion without prejudice and direct the Committee to meet with the Debtors and third parties to develop a reasonable discovery plan. Before permitting the Committee to re-file the Motion, the Court should order at a minimum that 1) the Committee meet and confer with Debtors and any party on which it would like to take Rule 2004 discovery on the scope of discovery; 2) the Committee reasonably narrow its expansive requests; 3) the Committee indicate every specific entity or person on which it requests an order for Rule 2004 discovery, rather than just requesting discovery from countless unspecified third parties; and 4) the Committee should submit the discovery requests it anticipates from *each* party rather than just a form request.

## BACKGROUND

### I. The Committee's Rule 2004 Motion is the Latest in a Series of Aggressive Discovery Tactics.

The Committee's Rule 2004 Motion must be viewed in the context of its litigation-first strategy throughout these proceedings as well as the vast amount of information already provided to the Committee. The Committee's approach has been file first and negotiate later—the exact opposite of meeting and conferring in good faith and cooperating in discovery. The Rule 2004 motion is the third instance of the Committee's extremely aggressive approach to discovery. The Committee has twice before served massive discovery that was nearly limitless in scope without discussing or meeting and conferring beforehand. Both times Debtors attempted to cooperate in order to make a reasonable-in-scope production, and once the parameters were narrowed, Debtors very quickly turned around large productions.

4

The Committee has also already received an enormous amount of discovery on an expedited basis. On June 7, 2010, the Committee served mammoth discovery requests on Debtors. Three days later it served similar requests on Miller Buckfire (also a subject of the Rule 2004 Motion) and Towers Watson. The Debtors began producing on June 16, 2010, and within six days produced approximately 15,000 pages. Another massive request came on July 1, 2010, and notwithstanding the holiday weekend, Debtors produced approximately 5,200 pages by July 6, 2010. Debtors have also worked to coordinate productions with third parties. Four recipients of the Rule 2004 Motion have made expedited productions: Miller Buckfire has produced over 1,000 pages; Bank of America has produced over 10,000 pages; Apollo and Wayzata have produced over 2,400 pages. On top of all this, the Committee has taken five depositions since June 24, 2010. The Committee already has been provided with significant discovery, and Debtors and certain third parties have shown themselves to be more than cooperative in providing expedited discovery in spite of the Committee's unreasonable approach.

## II. The Committee Did Not Provide the Discovery Requests or Meet with the Debtors Regarding the Requests' Scope Before Pursuing the Rule 2004 Motion.

On Thursday, July 8, 2010, the Committee filed its ex parte Rule 2004 motion. Although Debtors had asked well in advance of July 8, 2010 to see the Committee's requests on the 2007 LBO and the 2008 Exchange, the main topics of the Rule 2004 examination, the Committee would not provide them or otherwise cooperate with the Debtors. To the Debtors' knowledge, the Committee did not share either with any of the specifically named third parties who are listed in the motion as targets of the Rule 2004 discovery. The Committee also did not seek to meaningfully meet and confer with the Debtors on issues such as which third parties would be appropriate recipients of document requests, how to coordinate the various requests so as not to duplicate efforts and save the estate the expense of the Committee reviewing multiple duplicate

5

records, or on narrowing the scope of the requests. Moreover, rather than trying to coordinate on a briefing schedule—even an expedited schedule—with Debtors, the Committee simply filed its motion *ex parte* on a date when the Committee knew the Debtors were occupied with two depositions and briefing related to the contested July 12, 2010 hearing.

## **LEGAL STANDARD**

The Court has discretion to deny a 2004 Motion if the Committee has not shown good cause for the discovery sought. *See, e.g.* Fed. R. Bankr. P. 2004(a)("the court *may* order the examination of any entity)(emphasis added); *In re Enron Corp.*, 281 B.R. 836, 844 (Bankr. S.D.N.Y. 2002) (Court has discretion to deny a Rule 2004 request); *In re Bd. of Dirs. of Hopewell Int'l Ins., Ltd.*, 258 B.R. 580, 587 (Bankr. S.D.N.Y. 2001) (Rule 2004 "give[s] the Court significant discretion"). "The one seeking to conduct a Rule 2004 examination has the burden of showing good cause." *In re Eagle-Picher Indus., Inc.*, 169 B.R. 130, 134 (Bankr. S.D. Ohio 1994). "Despite the breadth of Bankruptcy Rule 2004 it must *first* be determined that the examination is proper." *Enron*, 281 B.R. at 842 (emphasis in the original)(internal citations and quotations omitted).

The Court may also deny the motion where the scope of the discovery sought is overly broad. *Eagle-Picher Indus., Inc.*, 169 B.R. at 134; *In re Texaco, Inc.*, 79 B.R. 551, 553 (Bankr. S.D.N.Y. 1987). Additionally, "Courts have imposed limits on the use of Rule 2004 examinations where the purpose of the examination is to abuse or harass." *Enron*, 281 B.R. at 840; *In re Duratech Indus., Inc.*, 241 B.R. 283, 289 (E.D.N.Y. 1999); *In re Mittco, Inc.*, 44 B.R. 35, 36 (Bankr. E.D. Wis. 1984); Collier on Bankruptcy v.9 § 2004.02[2].

6

## ARGUMENT

**I. The Committee's Motion Should Be Denied For Failure to Meet and Confer and for Failure to Show Good and Sufficient Reason for Moving *Ex Parte*.**

The Committee's Motion for Rule 2004 discovery should be denied for failure to meet and confer with counsel for the Debtors. The Committee has failed to contact or negotiate at all with the Debtors or third-parties regarding their Motion. Given this Court's mandate that a moving party confer with opposing counsel prior to filing a discovery-related motion, the Committee's failure to do so justifies denying the Motion so that the parties may discuss the scope of the discovery. Southern District of New York Local Bankruptcy Rule 7007-1(a).

Even in prearranged cases, there is no reason the Committee should take the extreme measure of filing this motion *ex parte*. That is particularly true where, as here, the Debtors repeatedly asked to see the Committee's discovery requests related to the LBO and Exchange. The Debtors requested multiple times to see the Committee's contemplated requests. In this context, the Committee cannot proceed *ex parte* because there are no "good and sufficient reasons why proceeding other than by notice of motion is necessary." Southern District of New York Local Bankruptcy Rule 9077-1(a). Because the Committee did not file an affidavit showing "good and sufficient reasons" to proceed *ex parte*, the Court should decline to permit this motion to go forward without proper notice to ***all implicated parties***. The Committee's failure to contact opposing counsel was unmitigated; the Committee failed to contact Debtors'

counsel informally, failed to notice the Motion and, with respect to four of the third-parties specifically enumerated in the Motion, failed to serve the Motion.[2]

## II. The Committee's Motion Should Be Denied Because the Discovery It Seeks Is Overbroad and More Costly than Beneficial.

The costliness of the Committee's requested Rule 2004 discovery to the Debtors' estate requires the denial of the Rule 2004 Motion as currently formulated. In evaluating a Rule 2004 Motion, the Court must ensure that the "examination should not be so broad as to be more disruptive and costly to the debtor than beneficial to the creditor." *In re Eagle-Picher Indus., Inc.*, 169 B.R. at 134 (quoting *Texaco,* 79 B.R. at 553). As a result of the Committee's aggressive tactics and failure to confer with Debtors or third-parties, the requests are vastly overbroad, amounting to essentially the equivalent of requests for all documents that the Debtors' senior management receives for a three-and-a-half year period.

The Committee's proposed document discovery is extraordinarily broad. As an initial matter, the Committee made no effort to narrow the time frame for the documents they seek. The instructions direct that responding parties produce documents from "January 1, 2007 to the date [of production]." (Motion, Ex. B (Instruction L)). And the requests themselves effectively seek every document that the senior management received. Of the 18 enumerated document requests in the draft requests, twelve are requests for "all documents" on a broad subject matter. (Committee's 2004 Motion, Ex. B, Requests 1-3, 5-10, 5, 17-18.) Three of the requests are similarly broad, requesting "all valuation reports…" "all offers, letters of intent, or term sheets…" or "all solicitation or offering memoranda…" on a broad subject. (Committee's 2004

---

[2] The Committee states that it is seeking discovery of nine enumerated third-parties, including Miller Buckfire, Lightyear, Odyssey and UBS AG, but, according to the Affidavit of Service for the Motion, it did not serve any of those four parties.

8

Motion, Ex. B, Requests 4, 12, 13.). As an example of the expansiveness of the individual requests themselves, one request is for "***All Documents and Communications*** Concerning any business plans, projections, forecasts, strategic plans and operating plans, including underlying assumptions for the Debtors," and another request is for "***All Documents and Communications*** concerning the Debtors' liquidity and capital…" (Committee's 2004 Motion, Ex. B, Requests 8, 10.) Certainly a request for all documents and communications concerning a business's capital is far beyond the bounds of what is necessary for the Committee to evaluate potential claims the estates may have on account of specific transactions. All documents concerning Debtors' capital could possibly include every maintenance report of every piece of rental machinery the Debtors own. The request in even broader when considering that the term "concerning" is defined as "having any logical or factual connection with the matter in question." (Committee's 2004 Motion, Ex. B, Definitions ¶ 33.) Furthermore, the Committee's definition of the term "Document," which goes on for nearly two pages, is quite similar to a definition of "Document," that this court has previously rejected as overbroad. *See Texaco*, 79 B.R. at 553 ("Penzoil's definition of the word "document" is obviously too broad and borders on the ridiculous.")

The scope of the Committee's unusually expansive requests is troubling given the amount of discovery that the Committee has already taken and the information that the Debtors have made available through the bankruptcy filing. Given its close study of the Debtors over the last 40 days, the Committee's inability to apply that information to narrow the scope of its inquiry to a reasonable set of categories is as implausible as its failure to confer with Debtors' counsel before filing this Motion. The Committee's Motion should be denied as currently formulated because its expansive scope is unjustified and unnecessarily burdensome.

9

K&E 17308314

### III. The Committee's Motion Should Be Denied Because It Seeks Unfettered Discretion to Pursue Discovery.

The Committee asks this Court to grant it apparently unlimited, self-authorizing discovery power over the LBO and the Exchange. The Committee's proposed order would give the Committee the power to serve any third party with document requests or a deposition notice "***in its discretion***." (Motion, Ex. A (Proposed Order ¶2) (emphasis added)). To make its unfettered discretion clear, the proposed order also provides that "The Committee may issue other discovery requests and subpoenas as may be necessary to accomplish the discovery authorized by this Order." (*Id*. at ¶5). The Committee intends to serve at least nine parties specifically but also states that it may serve countless unspecified third parties. (*See* Motion at 9.) The proposed Order would leave the Debtors and many of their constituents vulnerable to continued, uncontrolled discovery from the Committee.

The proposed Order would further expand the Committee's unrestrained discovery authority by permitting the Committee to sidestep service of discovery as mandated by Bankruptcy Rule 7004. The proposed Order provides that "Service by the Committee of any subpoenas or discovery requests on the Third Parties may be properly and completely effected by serving its counsel in the chapter 11 proceedings." (Motion, Ex. A (Proposed Order ¶2) (emphasis added)). The Committee makes no justification for this departure from the Rules, and, by including it, only expands the already unbounded discovery authority it requests from the Court.

The Committee's scattershot approach of taking nearly-identical Rule 2004 discovery from nine named and countless unnamed parties is also inefficient and a waste of the estate's resources. The duplicative nature of the Rule 2004 requests across parties will multiply the costs

10

to the Debtors with no corresponding benefit to the Committee. The more documents the Committee has to review, the more in fees Debtors' estate must pay. The duplication will lead to massive overlap between the requests on the various entities subject to the Rule 2004 discovery. For example, the Committee is seeking all communications from Debtor to advisors relating to the 2007 LBO and the 2008 Exchange from all entities. It also appears to be seeking the closing documents from all entities. (*See* Committee's 2004 Motion, Ex. B, Requests 6 & 7.)

The inefficiency that the Committee has built into its proposed discovery would result in the additional expense of the Debtors paying for the Committee to review those duplicates. The Debtors would also incur additional expense to the extent the estate must reimburse other entities responding to Rule 2004 discovery. Moreover, the degree to which the Rule 2004 requests are duplicative, and thereby unduly costly for Debtors, is unknown because the Committee seeks a broad license to take Rule 2004 discovery from an unlimited number of third parties not specified in the motion. (Committee's 2004 Motion ¶ 25). The Court can and should restrict the Committee from having unhindered power to seek Rule 2004 discovery from any third party entity that the Committee, at its sole discretion, decides should be subject to its sweeping requests. *Texaco*, 79 B.R. at 553 (restricting duplicative Rule 2004 requests)."

## IV. The Committee's Litigation-First Tactics Indicate that the Primary Purpose of the 2004 Requests is Harassment.

The Motion continues the Committee's practice of making an unannounced volley of demands seeking the maximum amount of discovery possible in the hope that the sheer burden and expense of compliance will enable the Committee to extract hold-up value. The Committee refused to share these requests informally with the Debtors or to seek the information informally prior filing this Motion. The Committee has already done this twice before, serving massive document demands on the Debtor and related third parties before the DIP Motion hearing last

11

month and doing so again prior to the Disclosure Statement hearing this month. In both of those instances, the Debtors cooperated in order to focus the Committee's requests and quickly turn around large document productions responsive to those requests and to keep these cases on track. Notwithstanding the Debtors' successful discussions with the Committee which narrowed the scope in both of those instances, the Committee refused to confer with the Debtors and, instead, filed this Motion *ex parte*. Given that the Debtors had previously asked to see the Committee's discovery requests related to the LBO and the Exchange *and* that the Debtors' counsel spent more than four hours with counsel to the Committee on the day the Committee filed the Motion, it is plain that this Motion and its proposed requests have the primary purpose of harassment and coercion rather than genuine claim investigation.

The Committee's refusal to name the specific third parties it intends to serve with Rule 2004 Requests, further indicates that the Rule 2004 Motion is intended to be a tool of harassment rather than discovery. The Committee is asking for an order that would read: "HEREBY ORDERED THAT…The Committee may, ***in its discretion***, and is authorized to, conduct written discovery and take oral examinations pursuant to Bankruptcy Rule 2004 concerning the requested information against…***any*** Third Parties." (Committee's 2004 Motion, Ex. A (Proposed Order))(emphasis added). This grant of an unrestrained mandate to seek Rule 2004 discovery from unspecified third parties is flatly contrary to the law.

The Court cannot allow discovery on unnamed third parties, because the Committee necessarily cannot meet its burden of showing that those parties have information that is properly discoverable under Rule 2004 if the third parties are unnamed. *Eagle-Picher Indus.* 169 B.R. at 134 (burden is on the party seeking Rule 2004 discovery to show cause). In *In re GHR Energy Corp.*, 35 B.R. 534, 537 (Bankr. D. Mass. 1983), the court denied a Rule 2004 motion where the

movant could not show the party from whom discovery was sought had any knowledge of the debtor's affairs: "[B]y looking to the language of Rule 2004, it is evident that an examination may be had only of those persons possessing knowledge of a debtor's acts, conduct or financial affairs so far as this relates to a debtor's proceeding in bankruptcy." *See also In re Wilcher*, 56 B.R. 428, 433-34 (Bankr. N.D. Ill. 1985) (party seeking Rule 2004 must show that entity from whom discovery is sought is sufficiently knowledgeable about matters effecting the administration of the estate). The Committee cannot show that unnamed third parties have information about the Debtors' affair unless they at the very least specify those parties, what their relationship is with the Debtors, and a theory as to what new relevant information the specific third party might have.

Because the purpose of the Rule 2004 requests is harassment, the Court should deny the Committee's Rule 2004 Motion. "Courts have imposed limits on the use of Rule 2004 examinations where the purpose of the examination is to abuse or harass." *Enron*, 281 B.R. at 840; *Duratech Indus., Inc.*, 241 B.R. at 283; *In re Martin*, 208 B.R. 807, 811 (N.D.N.Y. 1997)(imposing sanctions for harassing Rule 2004 motion); Collier on Bankruptcy v.9 § 2004.02[2]; *In re Merritt*, 126 B.R. 526, 527 (Bankr. S.D. Ohio 1991) ("Although Rule 2004 provides an easy way for parties to obtain information required to pursue potential actions or to administer the bankruptcy estate, its misuse can serve as a tool for harassment and can undermine both the fresh start and the automatic stay protections.").

**V.     The Court Should Exercise Its Significant Discretion to Limit Rule 2004 Discovery by Denying the Motion and Directing the Committee to Develop a Reasonable Scope of Discovery with Debtors.**

The Court has significant discretion over the Rule 2004 motion including the power to limit discovery or deny relief. *Enron*, 281 B.R. at 844 ("the Court will exercise its discretion under Rule 2004(a) to deny the [Rule 2004] motion"); *Bd. of Dirs. of Hopewell Int'l Ins.*, 258

13

B.R. at 587 (Rule 2004 "give[s] the Court significant discretion"). The Court can limit relief or deny a Rule 2004 Motion where discovery sought is duplicative or unduly burdensome. *In re Coffee Cupboard Group*, 128 B.R. 509 (Bankr. E.D.N.Y. 1991) (limiting scope of discovery based upon the "tenuous legal basis upon which the trustee might commence actions"); *In re Texaco*, 79 B.R. 551 at 556 (limiting scope of Rule 2004 discovery).

The Debtors request that the Court deny the Rule 2004 motion without prejudice, and set certain parameters on the Committee before allowing it to re-file the motion. This relief is well within the Court's broad discretion over Rule 2004 Motions. First, the Court should order the Committee to meet and confer with Debtors and any third party from whom discovery is sought before re-filing. Second, given that the Committee's requests are patently overbroad, the Court should order that any re-filed motion should contain substantially narrowed document requests. *See In re Texaco*, 79 B.R. at 553 (ordering limited definition of the term "document" where movant's definition was "too broad and borders on the ridiculous"). Third, the Committee must specifically name every third party and entity on which it requests Rule 2004 discovery and the basis for its belief that the third party has information that cannot be obtained from Debtors. That is the absolute minimum necessary to satisfy the rule that Rule 2004 discovery may only be had from those possessing actual knowledge of matters related to the bankruptcy. *GHR Energy Corp.*, 35 B.R. at 537. Finally, to prevent duplicative discovery and harassment of third parties, the Court should require the Committee to submit proposed document requests for *each* party it enumerates as a discovery target.

14

## **CONCLUSION**

For all of the foregoing reasons, the Committee's 2004 Motion should be denied and the Committee should be directed to meet with Debtors' representatives to attempt to a reach reasonable scope of discovery in the next 48 hours.

New York, New York  
Dated: July 12, 2010

*/s/ Brian S. Lennon*
James H.M. Sprayregen, P.C.
Ray C. Schrock (admitted *pro hac vice*)
Brian S. Lennon
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

- and -

Anup Sathy, P.C. (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

Counsel to the Debtors and Debtors in Possession\

K&E 17308314