# Exhibit A

**Amendment No. 1 to Backstop Unit Purchase Agreement**

# AMENDMENT NO. 1
# TO BACKSTOP UNIT PURCHASE AGREEMENT

**AMENDMENT NO. 1 TO BACKSTOP UNIT PURCHASE AGREEMENT** (as amended, supplemented, amended and restated or otherwise modified from time to time, this "Amendment"), dated as of September 2, 2010 (the "Effective Date"), by and among (a) Neff Corp., a Delaware corporation (as in existence on the date hereof, as a debtor-in-possession in the Chapter 11 Cases and as a reorganized debtor, as applicable, the "Company"), (b) each of the Affiliates of the Company listed on the signature pages hereto under the title "Debtors" (such Affiliates, each as in existence on the date hereof, as a debtor-in-possession in the Chapter 11 Cases and as a reorganized debtor, as applicable, together with the Company, each a "Debtor" and, collectively, the "Debtors"), (c) the entity listed on the signature pages hereto under the title "Backstop Party" (the "Backstop Party"), and (d) Reorganized Neff, L.L.C., a Delaware limited liability company ("Reorganized Neff"). Capitalized terms used in this Amendment and not otherwise defined herein shall have the meanings given to such terms in the Backstop Agreement (as defined below). The Debtors, the Backstop Party and Reorganized Neff are sometimes referred to herein, each as a "Party" and, collectively, the "Parties".

W I T N E S S E T H:

WHEREAS, the Debtors previously entered into a Backstop Unit Purchase Agreement, dated as of July 22, 2010 (as amended, supplemented, amended and restated or otherwise modified from time to time, the "Backstop Agreement"), with (a) Reorganized Neff, (b) the entities listed on Exhibit A attached hereto under the heading "Apollo" (such entities, collectively, "Apollo") and (c) the entity listed on Exhibit A attached hereto under the heading "Wayzata" (such entity, "Wayzata" and, together with Apollo, the "Original Investors");

WHEREAS, pursuant to the terms of the Plan, the Backstop Agreement, the Asset Purchase Agreement and the other Definitive Documents, the Original Investors and the Debtors agreed (subject to certain terms and conditions set forth in the Definitive Documents) on a restructuring of the Debtors that involves (among other things) the acquisition of substantially all of the assets of the Debtors by Reorganized Neff and/or one or more of its successors and permitted assigns to be financed, in part, with cash proceeds received by Reorganized Neff from the Rights Offering;

WHEREAS, pursuant to the Backstop Agreement, the Original Investors agreed to backstop the entire Rights Offering on the terms and subject to the conditions set forth in the Backstop Agreement (as in effect prior to the Effective Date);

WHEREAS, prior to the Effective Date and prior to the closing of the Auction (as defined below), Apollo assigned and transferred to Wayzata, and Wayzata assumed and accepted, Apollo's rights and obligations under the Backstop Agreement (pursuant to Section 12.1 of the Backstop Agreement) and the Commitment Letter pursuant to the terms of an Assignment and Assumption Agreement, dated as of August 9, 2010 (the "Assignment Agreement"), between the Original Investors;

WHEREAS, the Payout Event Procedures (such term, as used in this Amendment, also to include the Addendum to Amended Payout Event Procedures provided by the Debtors dated August 5, 2010 (the "Addendum to the Payout Event Procedures")) contemplate that competing Bids (as defined in the Payout Event Procedures) for a Payout Event may be submitted to the Debtors and that the Debtors may, on the terms and subject to the conditions set forth in the Payout Event Procedures, conduct an auction (an "Auction") to obtain the highest and otherwise best Bid;

WHEREAS, the Debtors elected to conduct an Auction to determine the Successful Bidder (as defined in the Payout Event Procedures);

WHEREAS, the Auction was conducted and closed in accordance with the terms and conditions of, and in compliance with, the Payout Event Procedures, the Bankruptcy Code and all applicable Orders of the Bankruptcy Court, and, in connection therewith, the Debtors determined and identified the Backstop Party and the final Bid submitted by the Backstop Party at the Auction (the "Backstop Party Bid") as the Successful Bidder and the Successful Bid, respectively; and

WHEREAS, in connection with the closing of the Auction and the announcement and identification of the Backstop Party and the Backstop Party Bid as the Successful Bidder and the Successful Bid, respectively, the Parties desire to amend the Backstop Agreement in certain respects on the terms set forth herein;

NOW, THEREFORE, in consideration of the premises and mutual covenants contained herein, the Parties hereby agree as follows:

1. Successful Bidder and Successful Bid. The Debtors hereby acknowledge and agree that: (a) the Auction was conducted and closed in accordance with the terms and conditions of, and in compliance with, the Payout Event Procedures, the Bankruptcy Code and all applicable Orders of the Bankruptcy Court; and (b) the Debtors have determined and identified the Backstop Party and the Backstop Party Bid as the Successful Bidder and the Successful Bid, respectively, in accordance with the terms and conditions of, and in compliance with, the Payout Event Procedures, the Bankruptcy Code and all applicable Orders of the Bankruptcy Court.

2. Assignment Agreement. The Debtors hereby acknowledge and agree that (a) they have been provided with a fully executed copy of the Assignment Agreement, (b) the assignment and assumption of Apollo's rights and obligations under the Backstop Agreement and the Commitment Letter as set forth therein complies with the terms and conditions of the Backstop Agreement and the Commitment Letter and (c) Wayzata has assumed Apollo's rights under the Backstop Agreement and the Commitment Letter.

3. Amendments to Backstop Agreement. Each of the Parties hereby agrees that, effective upon the Effective Date, the Backstop Agreement shall be amended as follows:

(a) Clause (d) in the preamble of the Backstop Agreement is amended and restated in its entirety to read as follows:

"(d) solely for purposes of Sections 1.2(d) and 12.17 hereof, Reorganized Neff, L.L.C., a newly formed Delaware limited liability company ("Reorganized Neff")."

(b) The fourth "Whereas" clause set forth in the recitals is amended and restated in its entirety to read as follows:

"**WHEREAS**, the amount of the Rights Offering shall be an amount equal to (the "Rights Offering Amount"): (a) $181.6 million minus (b) an amount equal to (x) the total amount of cash that would be paid by the Debtors in respect of Allowed First Lien Term Loan Claims and Allowed Second Lien Term Loan Claims if all of the holders of such claims (other than Wayzata solely in respect of, and solely in its capacity as a holder of, Allowed First Lien Term Loan Claims) elected to receive the First Lien Term Loan Cash Payment and the Second Lien Term Loan Cash Payment pursuant to the Plan minus (y) the total amount of cash that will actually be paid by the Debtors in respect of Allowed First Lien Term Loan Claims and Allowed Second Lien Term Loan Claims as a result of the holders of such claims electing to receive the First Lien Term Loan Cash Payment and the Second Lien Term Loan Cash Payment pursuant to the Plan;"

(c) The last sentence of Section 1.2(a) of the Backstop Agreement is amended and restated in its entirety to read as follows:

"The Unsubscribed Units that each of the Backstop Parties is required to purchase pursuant to this Section 1.2(a) shall be rounded to the nearest whole number (if it would otherwise require the issuance of a fraction of a New Common Unit) and such Unsubscribed Units are referred to herein as such Backstop Party's "Backstop Commitment Units"."

(d) Section 2.10 of the Backstop Agreement is amended and restated in its entirety to read as follows:

"2.10. Compliance With Environmental Laws. Except as set forth on Schedule 2.10 hereto, each Debtor and its Subsidiaries: (a) is in compliance with any and all applicable Environmental Laws; (b) have received and are in compliance with all permits, licenses, approvals or other Consents required of them under applicable Environmental Laws to conduct their respective businesses as conducted as of the date of this Agreement and as of the Effective Date; and (c) has no knowledge and have not received written notice from any Governmental Body or any third party of (i) any violations of, or liability under, Environmental Laws with respect to the presence of any hazardous or toxic substances or wastes, pollutants or contaminants at, on, under, or emanating from any of their respective businesses and (ii) any actual or potential liability for the investigation or remediation of any disposal or release of hazardous or toxic substances or wastes, pollutants or contaminants at, on, under or emanating from any of their respective currently owned or leased real properties or tangible

personal properties, or any of their respective formerly owned, operated or leased assets, or any of their respective divested businesses or predecessors in interest, except in the case of any exceptions to clauses (a), (b) or (c) that would not, individually or in the aggregate, reasonably be expected to be adverse in any material respect to any Debtor or any of its Subsidiaries.  Each Debtor and its Subsidiaries have made available to the Backstop Parties true, correct and complete copies of all environmental reports, studies, investigations or correspondence concerning the presence of any hazardous or toxic substances or wastes, pollutants or contaminants at, on, under, or emanating from any of their respective currently owned or leased real properties or tangible personal properties, or any of their respective formerly owned, operated or leased assets, or any of their respective divested businesses or predecessors in interest, to the extent such reports, studies, investigations or correspondence are in the possession or control of such Debtor or any of its Subsidiaries.  For purposes of this Section 2.10, "disposal" and "release" shall have the same meanings as those terms are defined in the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended (42 U.S.C. § 9601 et seq.)."

(e) Clause (a) set forth in Section 4.1 of the Backstop Agreement is amended and restated in its entirety to read as follows:

"(a) obtain a waiver of Bankruptcy Rule 6004(h) and request that the Agreement Order be effective immediately upon its entry by the Bankruptcy Court, which Agreement Order shall not be revised, modified, or amended by the Confirmation Order or any other further order of the Bankruptcy Court, except to the extent that the Agreement Order is revised, modified or amended by any such Order to authorize and approve the execution, delivery and performance of Amendment No. 1 to BUPA and any other amendments, supplements or modifications to this Agreement that the parties hereto may enter into from time to time,"

(f) Section 4.5 of the Backstop Agreement is amended and restated in its entirety to read as follows:

"4.5 **Use of Proceeds.**  The Debtors shall use the Proceeds received from the Acquisition Entities pursuant to the Acquisition Documentation to, among other things, fund the payment of distributions to be made on the Effective Date pursuant to the Plan and funding fees and/or expenses related to the Chapter 11 Cases."

(g) Section 4.10 of the Backstop Agreement is amended and restated in its entirety to read as follows:

"4.10. **Acquisition**.  The Debtors shall take all such actions as are reasonably necessary to cause the Acquisition to be treated as a taxable transaction for United States federal income tax purposes, including the making of any appropriate elections under Subchapter K of the Code, and the imposition of reasonable trading restrictions to ensure that none of the Acquisition Entities is

treated as a corporation for federal income tax purposes. The Debtors shall treat the Acquisition as having occurred prior to the distribution by the Debtors of New Common Units to certain holders of claims under the Plan, and shall not take any position inconsistent with the treatment of the Acquisition, as a taxable transaction for all financial accounting and income tax purposes. The Debtors shall be wound-up, dissolved and liquidated concurrently with or promptly following the Effective Date, subject to the closing of the Chapter 11 Cases. The Debtors shall take, and shall cooperate with the Backstop Parties in taking, all actions reasonably necessary to minimize federal, state and local income and other taxes of the Debtors, including, but not limited to, the filing of notices and clearance certificates with applicable taxing authorities. In the event of a Restructuring Request, this Section 4.10 (other than the immediately preceding sentence) shall thereupon cease to apply and shall be of no further force or effect."

(h) Section 4 of the Backstop Agreement is amended by adding a new Section 4.13 to such Section to read as follows:

"4.13 **Rejected Contracts**. No Debtor shall reject any Contract in the Chapter 11 Cases or any other bankruptcy proceeding following the Amendment No. 1 Effective Date without the prior written consent of the Backstop Parties (such consent not to be unreasonably withheld, conditioned or delayed)."

(i) Section 6.1(n) of the Backstop Agreement is amended by adding a new sentence at the end of such Section to read as follows:

"In the event of a Restructuring Request, clauses (i), (ii) and (iii) of this Section 6.1(n) shall thereupon cease to apply and shall be of no further force or effect."

(j) Section 12 of the Backstop Agreement is amended by adding a new Section 12.17 to such Section to read as follows:

"12.17 **Restructuring Request**. At any time before the date that is ten (10) days prior to the Effective Date, the Backstop Parties may, in their sole discretion and pursuant to a writing delivered to the Debtors (a "Restructuring Request"), elect to cause the transactions contemplated by this Agreement and the Ancillary Agreements and the other Definitive Documents to be effectuated through the purchase by Reorganized Neff of one hundred percent (100%) of the outstanding equity interests of reorganized Holdings (the "Purchased Shares") and/or debt of reorganized Holdings. Any Restructuring Request hereunder (and the taking of any actions that are necessary or appropriate with respect thereto) shall not constitute a breach by any party of this Agreement, any of the Ancillary Agreements or any other Definitive Document, and shall not materially alter the rights and obligations of any party to this Agreement, any of the Ancillary Agreements or any other Definitive Document, except to the extent necessary based solely upon such change in transaction structure. Upon the occurrence of a

Restructuring Request, the Debtors, Reorganized Neff and the Backstop Parties shall cooperate in good faith (a) to amend and restate this Agreement and the Asset Purchase Agreement to the extent necessary to provide for Reorganized Neff's purchase of the Purchased Shares and/or debt of reorganized Holdings, and (b) to change, modify or amend any of the Ancillary Agreements, any other Definitive Document and/or the Plan. Any required documentation to be prepared as a result of such Restructuring Request shall in each case be finalized by the parties to this Agreement as promptly as practicable; provided, that any party may object to any term or condition of any such documentation that would materially alter such party's rights or obligations from the rights and obligations of such party set forth in this Agreement, the Asset Purchase Agreement, any of the Ancillary Agreements, the other Definitive Documents and the Plan (except to the extent such alterations are necessary based solely upon the change in transaction structure); provided, further, that if the parties hereto, each using their respective commercially reasonable efforts, are unable to agree upon the necessary documentation to effect the Restructuring Request, then upon written notice by the Debtors or the Backstop Parties to the other, such Restructuring Request shall terminate and all obligations of the parties hereto with respect to such Restructuring Request shall cease. In the event the transactions contemplated by this Agreement and the Ancillary Agreements are restructured pursuant to a Restructuring Request, any condition to Closing set forth in Section 6 of this Agreement relating solely to the "asset purchase" structure of the Contemplated Transactions shall automatically be deemed to have been waived by each of the parties hereto."

(k) Section 13.1 of the Backstop Agreement is amended by deleting the definition of "Initial Consenting Holders" set forth in such Section in its entirety.

(l) Section 13.1 of the Backstop Agreement is further amended by amending and restating the following defined terms in their entirety to read as follows:

"Backstop Party Ancillary Agreements: means, collectively, the Amendment No. 1 to BUPA, the Asset Purchase Agreement and the Escrow Agreement."

"Consenting Lenders' Termination Event: has the meaning given to such term in the Plan Support Agreement as in effect on the date of this Agreement."

"Debtor Ancillary Agreements: means, collectively, the Amendment No. 1 to BUPA, the Asset Purchase Agreement, the Escrow Agreement, the Bill of Sale (as defined in the Asset Purchase Agreement), the Assignment and Assumption Agreement (as defined in the Asset Purchase Agreement) and the certificate described in Section 6.1(u) hereof."

"Exhibit Plan: means the form of the Plan attached as Exhibit B to the Amendment No. 1 to BUPA."

"Payout Event Procedures: has the meaning given to such term in the Exhibit Plan, and shall include the Addendum to the Payout Event Procedures."

(m) Section 13.1 of the Backstop Agreement is further amended by adding the following new defined terms to such Section in appropriate alphabetical order:

"Addendum to the Payout Event Procedures: has the meaning given to such term in the Amendment No. 1 to BUPA."

"Amendment No. 1 to BUPA: means Amendment No. 1 to Backstop Unit Purchase Agreement, dated as of September 2, 2010, by and among the Debtors, the Backstop Parties and Reorganized Neff, as amended, supplemented, amended and restated or otherwise modified from time to time."

"Amendment No. 1 Effective Date: means the "Effective Date" as defined in the Amendment No. 1 to BUPA."

"Asset Purchase Agreement: has the meaning given to such term in the recitals hereof."

"Holdings: means Neff Holdings Corp., a Delaware corporation."

"Purchased Shares: has the meaning given to such term in Section 12.17 hereof."

"Restructuring Request: has the meaning given to such term in Section 12.17 hereof."

"Wayzata: has the meaning given to such term in the Amendment No. 1 to BUPA."

(n) Schedule 1 of the Backstop Agreement is amended and restated in its entirety to read as set forth on Schedule 1 to this Amendment.

(o) Schedule 2 of the Backstop Agreement is amended and restated in its entirety to read as set forth on Schedule 2 to this Amendment.

(p) Schedule 2.3 of the Backstop Agreement is amended and restated in its entirety to read as set forth on Schedule 2.3 to this Amendment.

(q) Schedule 2.10 of the Backstop Agreement is amended and restated in its entirety to read as set forth on Schedule 2.10 to this Amendment.

4. Covenants. Promptly following the Effective Date (but in any event within three (3) Business Days following the Effective Date), the Debtors shall file the following with the Bankruptcy Court:

7

(a) a written notice that confirms that (i) the Auction was conducted and closed in accordance with the terms and conditions of, and in compliance with, the Payout Event Procedures, the Bankruptcy Code and all applicable Orders of the Bankruptcy Court; and (ii) the Debtors have determined and identified the Backstop Party and the Backstop Party Bid as the Successful Bidder and the Successful Bid, respectively, in accordance with the terms and conditions of, and in compliance with, the Payout Event Procedures, the Bankruptcy Code and all applicable Orders of the Bankruptcy Court; and

(b) (i) an executed copy of this Amendment (<u>provided</u>, that the signature pages, Exhibits and Schedules to this Amendment shall be redacted) and (ii) such other amended, amended and restated or modified Definitive Documents, each in form and substance reasonably acceptable to the Backstop Party, to incorporate the terms of the Debtors' Second Amended Joint Plan Pursuant to Chapter 11 of the Bankruptcy Code, dated as of August 19, 2010 [Docket No. 346], and this Amendment and any other changes to such Definitive Documents that the Backstop Party and the Debtors agree to make to such Definitive Documents as part of the Backstop Party Bid.

5. <u>Effectiveness</u>. This Amendment shall become effective as of the Effective Date.

6. <u>Miscellaneous</u>.

(a) Except as expressly provided herein, this Amendment shall not, by implication or otherwise, alter, modify, amend or in any way affect any of the obligations, covenants, representations, warranties or rights contained in the Backstop Agreement, all of which are ratified, confirmed and reaffirmed in all respects by the Parties and shall continue in full force and effect.

(b) Each reference to the Backstop Agreement hereafter made in any document, agreement, instrument, notice or communication shall mean and be a reference to the Backstop Agreement as amended and modified hereby.

(c) **THIS AMENDMENT SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH, AND THE RIGHTS OF THE PARTIES SHALL BE GOVERNED BY, THE LAWS OF THE STATE OF NEW YORK, WITHOUT GIVING EFFECT TO THE CONFLICTS OF LAW PRINCIPLES THEREOF EXCEPT SECTIONS 5-1401 AND 5-1402 OF THE GENERAL OBLIGATIONS LAW OF THE STATE OF NEW YORK.**

(d) The Section captions herein are for convenience of reference only, do not constitute part of this Amendment and shall not be deemed to limit or otherwise affect any of the provisions hereof.

(e) This Amendment, together with the Backstop Agreement and the Ancillary Agreements, constitutes the entire agreement among the Parties with respect to the subject matter hereof and supersedes all prior agreements and understandings among the Parties with respect to such subject matter.

(f) This Amendment may be executed in any number of counterparts, each of which will be an original, and all of which, when taken together, will constitute one agreement. Delivery of an executed counterpart of this Amendment by facsimile or portable document format (PDF) will be effective as delivery of a manually executed counterpart of this Amendment.

(g) Any provision of this Amendment that is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall (to the full extent permitted by Law) not invalidate or render unenforceable such provision in any other jurisdiction.

(h) The words "include," includes" and "including," when used herein shall be deemed in each case to be followed by the words "without limitation" (regardless or whether such words or similar words actually appear). Any reference in this Amendment to gender shall include all genders, and words imparting the singular number only shall include the plural and vice versa. The words such as "herein," "hereinafter," "hereof" and "hereunder" refer to this Amendment as a whole and not merely to a subdivision in which such words appear unless the context otherwise requires.

(i) The Parties agree that they have been represented by legal counsel during the negotiation and execution of this Amendment and, therefore, waive the application of any Law, regulation, holding or rule of construction providing that ambiguities in an agreement or other document shall be construed against the party drafting such agreement or document.

(j) The provisions of Section 12.13 of the Backstop Agreement are hereby incorporated herein by reference with full force and effect as if fully set forth herein by applying the provisions thereof *mutatis mutandis* (such that all changes and modifications to the defined terms and other terminology used in such provisions shall be made so that such provisions can be applied in a logical manner in this Amendment). For the avoidance of doubt, the provisions of Section 12.13 of the Backstop Agreement, as incorporated herein and modified hereby, shall apply with equal force and effect with respect to the information set forth on the Exhibits and Schedules attached to this Amendment.

[Remainder of Page Intentionally Left Blank.]

IN WITNESS WHEREOF, the parties have executed and delivered this Amendment as of the date first written above.

**DEBTORS:**

**NEFF CORP.**

By: _____
Name: Mark Irion
Title: CFO

**NEFF HOLDINGS CORP.**

By: _____
Name: Mark Irion
Title: CFO

**NEFF RENTAL, INC.**

By: _____
Name: Mark Irion
Title: CFO

**NEFF RENTAL LLC**

By: _____
Name: Mark Irion
Title: CFO

**NEFF FINANCE CORP.**

By: _____
Name: Mark Irion
Title: CFO