Hearing Date: September 14, 2010 at 11:00 a.m.

PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 36th Floor
New York, New York 10017
Telephone: (212) 561-7700
Facsimile:  (212) 561-7777
Robert J. Feinstein, Esq.
Alan J. Kornfeld, Esq.
Ilan D. Scharf, Esq.

Counsel for the Official Committee
of Unsecured Creditors of Neff Corp., et al.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| NEFF CORP., et al.,[1] | Case No. 10-12610 (SCC) |
| Debtors. | Jointly Administered |

**OBJECTION OF OFFICIAL COMMITTEE OF UNSECURED
CREDITORS TO MOTION OF THE DEBTORS FOR ENTRY OF AN
ORDER EXTENDING THEIR EXCLUSIVE PERIODS TO FILE AND
SOLICIT VOTES FOR A CHAPTER 11 PLAN PURSUANT TO SECTION
1121(D) OF THE BANKRUPTCY CODE**

The Official Committee of Unsecured Creditors (the "Committee") of Neff Corporation

("Neff") and its related debtors and debtors in possession (collectively, the "Debtors") in the

above-referenced cases (the "Chapter 11 Cases") under chapter 11 of Title 11 of the United

States Code (as amended, the "Bankruptcy Code"), by and through its undersigned counsel,

hereby objects (the "Objection") to the *Motion of the Debtors for Entry of a Bridge Order and an*

*Order Extending their Exclusive Periods to File and Solicit Votes for a Chapter 11 Plan*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Neff Holdings LLC (0571); Neff Corp. (6400); Neff Finance Corp. (3639); Neff Holdings Corp. (0431); Neff Rental, Inc. (0403); and Neff Rental LLC (3649).

*Pursuant to Section 1121(d) of the Bankruptcy Code* (the "Motion") [Docket No. 368].  In

support of its Objection, the Committee respectfully states as follows:

## PRELIMINARY STATEMENT

      1.     It is apparent that since well before the Petition Date, the Debtors wedded

themselves to pursuing a plan of liquidation that effects a sale of the Debtors' assets, and the

release of all claims against all of the participants in Neff's 2007 leveraged buyout (the "2007

LBO"), to the exclusion of any other plan in these Chapter 11 Cases.  It is also clear from the

Debtors' harsh reaction to the Committee's investigation of potential claims arising from the

2007 LBO (any such claims, the "LBO Claims") that the Debtors will not pursue a plan that does

not provide gratuitous releases of the estates' claims against, among others, (a) former

shareholder Odyssey which reaped hundreds of millions of dollars in the 2007 LBO it helped

engineer, (b) the LBO sponsor, Lightyear, and (c) the Company's insiders who orchestrated, and

in some cases profited handsomely from, the 2007 LBO.  The Plan also grants releases for no

consideration to the ABL lenders, First Lien Term Loan lenders and Second Lien Term Loan

lenders; indeed, only one First Lien Term Loan Holder, Wayzata, is providing any value to the

estates under the Plan, in the form of an equity investment, while all of these other LBO

participants are getting a clean bill of health for no contribution whatsoever.

      2.     The Debtors argue obliquely in their recently-filed opposition to the

Committee's standing motion that (a) on the one hand, no viable claims arising from the 2007

LBO exist, and (b) on the other hand, the claims exist, but are being settled under the Plan (*see*

Debtors' Opposition Standing at ¶6) (claiming that the Debtors' achievement in these cases are "a direct result of their decision to settle these claims ….").[2]

3.    There is simply no settlement of the LBO Claims under in the Plan. Rather, the Plan fully recognizes, validates and pays the ABL, the First Lien Term Loans, and the Second Lien Term Loans in the order of their priority, such that they are all to be paid in full, in cash, except the Second Lien Term Loans which will recover only to the extent there are available funds after paying the senior lenders. Thus, all of lenders' claims are being validated and satisfied in cash, without any reduction, offset, payment or other contribution of anything of any value to the estates – a full validation of these claims. Equally evident from the face of the Plan is the inclusion of blanket direct and third party, gratuitous releases given to not just the lenders, but also to all of the Debtors' past and present officers and directors (including the seven current directors who approved and, in the Chairman's case, materially profited from, the 2007 LBO) and shareholders, including Odyssey, which is being left off the hook for a several hundreds million dollar claim for nothing. These releases are not necessary to the Plan or the success of the Debtors' business post-confirmation. [3]

---

[2] On August 18, 2010, the Committee filed the *Motion of the Official Committee of Unsecured Creditors for Entry of an Order (i) Authorizing the Committee to Prosecute Certain Claims on Behalf of the Bankruptcy Estates and (ii) Granting Related Relief* (the "Standing Motion"), along with a draft Complaint attached as Exhibit A to the Standing Motion (the "LBO Complaint") [Docket No. 345]. Through the Standing Motion, the Committee seeks to assert the LBO Claims against the parties identified as potential defendants in the LBO Complaint. These defendants include current and former shareholders, officers and directors of the Debtors. On September 4, 2010, the Debtors filed their opposition to the Standing Motion (the "Debtors' Opposition to Standing") [Docket No. 394].

[3] It would be simple enough to amend the Debtors' Plan to eliminate these releases and provide for the establishment of a liquidation trust for the benefit of general unsecured creditors to which the LBO Claims would be transferred, instead of gratuitously releasing them, but the Debtors have not seen fit to consider this approach.

4.      Lest there be any doubt, the $365,000 gift in the Plan is **not** tied to a

settlement of the LBO Claims.  The money is offered up in the Disclosure Statement

independent of any discussion of the LBO Claims (as, indeed, there was no discussion of the

LBO Claims in the Disclosure Statement before the Committee objected).[4]  The $365,000 "gift"

is not described as settlement consideration for the LBO Claims, but merely as funds that will be

given to Class 8 and 9 unsecured creditors so long as they vote to accept the Plan.  No nexus to

the release of the LBO Claims, or a Rule 9019 compromise and settlement, is stated or implied.

It would appear to be more of a stratagem to get an impaired class to accept the Plan than an

effort to effect a compromise and settlement of the LBO Claims.

5.      It is clear that the only plan the Debtors will propose is one that, to the

detriment of general unsecured creditors, releases all the LBO Claims for no consideration.  By

their Motion, the Debtors seek to extend the exclusive periods during which the Debtors may file

a chapter 11 plan (the "Exclusive Filing Period") and solicit acceptances thereof (the "Exclusive

Solicitation Period," and collectively with the Exclusive Filing Period, the "Exclusive Periods")

by 120 days.

6.      The Court should deny the Debtors' request for extension of the

Exclusivity Periods so that the Committee (or any other party in interest) may propose and

confirm a plan of liquidation that effects the sale of the Debtors' assets to a newly-formed entity

---

[4] In fact, as the Committee learned three days ago by reviewing the Debtors' Opposition Standing, the Debtors appear to have devoted substantial resources investigating these claims before filing bankruptcy, yet the original disclosure statement did not mention a possibility of these claims even existing.  Disclosure was made only after the Committee objected and language was included in the Disclosure Statement that was prepared by the Committee based on its investigation to date.  At that time, the Committee was not made aware that the Debtors had AlixPartners investigate these claims and no mention of the AlixPartners investigation was made in the Disclosure Statement.  Other than adding that they "disagree" with the Committee's assertions, the Debtors did see fit to disclose the results of AlixPartners' analysis or even that it had been conducted.

(owned by Plan Sponsor Wayzata or another buyer) and the formation of a liquidation trust for

the benefit of unsecured creditors to pursue the LBO Claims and other avoidance claims instead

of having them gratuitously released.  In that manner, the Debtors' business operations can

continue undisturbed after the effective date of a plan in the hands of new owners, while

unsecured creditors could assert the estate's litigation claims against parties (*e.g.*, Odyssey and

Lightyear) that will have no affiliation with Neff's business post-confirmation and thereby see

some meaningful recoveries.  The Debtors' refusal to consider such a plan, opting instead for one

that releases all past and present insiders, among others, is cause to terminate exclusivity.

       7.      Despite the alarmist rhetoric in the Debtors' Opposition to Standing, the

Debtors' plan options are not limited to (a) a plan that releases all the LBO Claims for no

consideration and (b) a plan that mires the Debtors in unbridled litigation pre-confirmation while

the Debtors bear the cost and uncertainty of litigation for years.  The sale/liquidation trust

concept espoused by the Committee is hardly a novel one.  That type of plan has been used in

countless cases, including the recent *Chrysler* cases in this District, among many others.[5]

       8.      Since the Debtors have demonstrated that they are unwilling to propose

any plan in these cases other than one that gratuitously releases all of the estates' LBO Claims,

the playing field should be opened up to allow the Committee or any other party in interest to file

---

[5] *See, e.g., In re Old Carco LLC (f/k/a Chrysler LLC)*, Case No. 09-50002 (Bankr. S.D.N.Y.) (confirmed plan provided for sale of debtors' businesses as going concern and pursuit of claims related to prepetition leveraged buyout); *In re Fred Leighton Holdings, Inc.*, Case No. 08-11363 (Bankr. S.D.N.Y.) (confirmed plan provided for sale of debtors' business as well as establishment of liquidation trust to, among other things, pursue litigation claims); *In re Le-Nature's, Inc.*, Case No. 06-25454 (Bankr. W.D.Pa.) (debtor's assets sold pursuant to section 363 of the Bankruptcy Code, and confirmed plan established liquidation trust to, among other things, pursue litigation claims on behalf of estate); *In re Felt Manufacturing*, Case No. 05-13724 (Bankr. D.N.H.) (same); and *In re Agway, Inc.*, Case No. 02-65872 (Bankr. N.D.N.Y.) (same), *In re Pennsylvania Fashions, Inc.*, Case No. 02-31152 (Bankr. D.N.J.) (same).

a confirmable plan that embodies the recognition, as well as either the settlement or prosecution,

of the estate's valuable claims, so that unsecured creditors in this case can receive a distribution

more in line with their legal entitlement than the $365,000 so-called gift, which is more a gift to

the releasees than to the unsecured creditors.

## RELIEF REQUESTED

9.      The Debtors' Exclusive Filing Period currently expires on September 13,

2010, and the Debtors seek a 120-day extension to January 11, 2011. The Debtors also seek a

120-day extension of their Exclusive Solicitation Period to March 12, 2011.

## OBJECTION

10.      Section 1121(d) of the Bankruptcy Code permits the Court to extend the

Debtors' Exclusive Periods for "cause." If the Court denies confirmation of the Plan and grants

the relief requested in the Committee's Standing Motion, then there will be no cause to extend

the Debtors' Exclusive Periods.

11.      Section 1121(d) does not define what constitutes "cause" to extend or

reduce the exclusivity period. *In re Texaco, Inc.*, 81 B.R. 806, 812 (Bankr. S.D.N.Y. 1988). In

*Texaco*, the Court stated that "plan exclusivity provisions should not be employed as a tactical

device to put pressure on parties to yield to a plan they consider unsatisfactory." *Id*. Ultimately,

whether "cause" exists is based on the "facts and circumstances in each individual case," and

"the court is granted broad discretion to determine what is sufficient cause." *In re Sharon Steel*

*Corp.*, 78 B.R. 762, 763-65 (Bankr. W.D.Pa. 1987); *see also In re All Seasons Industries, Inc.*,

121 B.R. 1002, 1004 (Bankr. N.D. Ind. 1990).  Courts generally consider a number of factors in

determining whether cause exists to extend exclusive periods, including:

      a.      the size and complexity of the case;

      b.      the necessity for sufficient time to permit the debtor to negotiate a chapter 11 plan and prepare adequate information;

      c.      the existence of good faith progress toward reorganization;

      d.      the fact that the debtor is paying its bills as they come due;

      e.      whether the debtor has demonstrated reasonable prospects for filing a viable plan;

      f.      whether the debtor has made progress in its negotiations with creditors;

      g.      the amount of time that has elapsed in the case;

      h.      whether the debtor is not seeking to extend exclusivity to pressure creditors to accede to the debtor's reorganization demands; and

      i.      the existence of an unresolved contingency.

*See In re Adelphia Commc'ns Corp.*, 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006).

12.      Based on the foregoing factors, the Court should deny the Debtors' request

for an extension of the Exclusive Periods.

13.      Here, the Chapter 11 Cases are not complex.  If the Debtors' Plan is not

confirmed, then the Debtors' assets can be sold through another plan or a sale under section 363

of the Bankruptcy Code, and the LBO Claims can be preserved and maximized.  Clearly, there is

interest in the Debtors' assets as demonstrated by the robust bidding at the auction.  Moreover, a

plan in this case should be straightforward:  the LBO Claims, together with any other residual

assets of the Debtors, should be put into a plan trust that can liquidate assets, pursue litigation for

7

the benefit of creditors, and distribute proceeds to creditors.  As such, this factor weighs against an extension of exclusivity.

14.    The Debtors have had more than sufficient time to prepare and negotiate a chapter 11 plan and prepare adequate information.  The Debtors have been exploring restructuring options since August 2009, and already negotiated and solicited acceptance of their Plan.  As such, the Debtors have had more than sufficient time to prepare and negotiate a plan. The fact that they chose to negotiate a defective plan should not stand in the way of another party filing a plan that takes the LBO Claims into account.  As such, this factor weighs against an extension of exclusivity.

15.    The Debtors have had their opportunity to put forward a plan that accounts for the LBO Claims.  However, the Debtors have not done so.  Instead, the Debtors seek confirmation of the Plan that releases the LBO Claims against current and former shareholders, officers and directors, among others.  If confirmation of the Plan is denied, then the Debtors will not have (a) made sufficient progress towards reorganization to merit an extension of the Exclusive Periods, (b) demonstrated a reasonable prospect for filing a viable plan, and (c) made sufficient progress in negotiations with unsecured creditors.  Thus, these factors all weigh against an extension of exclusivity.

16.    Extending the Exclusive Periods in these cases is inappropriate because the Debtors are using exclusivity to pressure creditors into accepting their Plan that grants a blanket release to insiders and others.  The death-trap provision (offering a $365,000 "gift" to unsecured creditors only if they vote to accept the Plan) is clear evidence of the Debtors'

coercive intent.  The Debtors should not be permitted to continue using exclusivity as a means of limiting unsecured creditors' rights.

17.    Moreover, Debtors are leveraging their exclusivity rights to obtain a benefit for their current shareholders.  The proposed retention of a benefit for shareholders comes in the form of a release of valuable claims against them, without any consideration to the estate, should be subject to even higher scrutiny than a new value plan in which equity at least proffers a contribution in exchange for the retained benefit.  The Supreme Court has suggested that such circumstances might *require* the opportunity to offer a competing plan to ascertain the market value of retained property.  *Bank of America Nat'l Trust and Savings Assoc. v. 203 North LaSalle Street Partnership*, 526 U.S. 434, 441-43, 119 S.Ct. 1411 (1999) (rejecting new value plan under which partners retained nominally worthless equity interests, stating: "whether a market test would require an opportunity to offer competing plans or would be satisfied by a right to bid for the same interest sought by old equity is a question we do not decide here."); *see also In re Situation Management Systems, Inc.*, 252 B.R. 859, 864-66 (Bankr. D. Mass. 2000) (terminating exclusivity in response to new value plan); *In re SM 104, Ltd.*, 160 B.R. 202, 225 (Bankr. S.D. Fla. 1993) (same).  As such, the Court should deny the Motion so that another party may have an opportunity to put forward a plan that does not provide gratuitous releases to the Debtors' shareholders.

18.    The fact that these Chapter 11 Cases are only four months old should not sway the Court in favor of extending the Exclusive Periods.  While the cases are only four months old, the Debtors have been taking steps to restructure their businesses since August 2009

– more than one year ago, and the cases have been prosecuted deliberately by the Debtors at an

accelerated pace.[6]  It is time for the process to be opened up so that another party in interest can

propose a confirmable plan that maximizes the value of **all** the estates' assets.

WHEREFORE, the Committee respectfully requests that Court deny the Debtors' request

for extensions of the Exclusive Periods.


Dated:    September 7, 2010            PACHULSKI STANG ZIEHL & JONES LLP
          New York, New York


                                      */s/ Ilan D. Scharf*
                                      Robert J. Feinstein, Esq.
                                      Alan J. Kornfeld, Esq.
                                      Ilan D. Scharf, Esq.
                                      780 Third Avenue, 36th Floor
                                      New York, New York 10017
                                      Telephone:  (212) 561-7700
                                      Facsimile:  (212) 561-7777

                                      Counsel for the Official Committee
                                      of Unsecured Creditors of Neff Corp., et al.

NY/21865

---

[6] As to the last factor, the Committee has no reason to believe that the Debtors are not paying their bills as they come due.